# EXHIBIT "A"

**PREPARED BY:**
Ronald B. Glazer, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA  19103
(215) 977-2112


**RECORD AND RETURN TO:**
Ronald B. Glazer, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA  19103
(215) 977-2112



**51406119**
**Page: 1 of 60**
03/27/2006 10:10AM

This Document Recorded          Doc Id: 51406119
03/27/2006                      Receipt #: 486653
10:10AM                         Rec Fee: 74.50
Doc Code  DM   Commissioner of Records, City of Philadelphia


# DECLARATION OF CONDOMINIUM

# OF

# 315 ARCH STREET, A CONDOMINIUM

Pursuant to the provisions of the
Pennsylvania Uniform Condominium Act,
68 Pa. C.S. §3101 et seq., as amended

## ARTICLE XIII

### BUDGETS; COMMON EXPENSES; ASSESSMENTS AND ENFORCEMENT

13.1 Fiscal Year. The fiscal year of the Association shall be the calendar year unless otherwise determined by the Executive Board.

13.2 Preparation and Approval of Budget.

(a) On or before November 15 of each year (or forty-five (45) days before the beginning of the fiscal year if the fiscal year is other than the calendar year), the Executive Board shall adopt an annual budget for the Association containing an estimate of the total amount considered necessary to pay the cost of Maintenance, management and operation of the Common Elements, and the cost of wages, materials, insurance premiums, services and utilities, supplies and other expenses that may be declared to be Common Expenses by the Act, this Declaration, the Bylaws or resolution and which will be required during the ensuing fiscal year for the administration, operation and Maintenance of the Property and the rendering to the Unit Owners of all related services. Such budget shall also include such reasonable amounts as the Executive Board considers necessary to provide working capital, a general operating reserve and reserves for contingencies and replacements. The budget shall segregate General Common Expenses and various types of Limited Expenses, if any, with the allocation of Limited Expenses to the Unit(s) responsible for payment thereof.

(b) On or before the next succeeding November 30 (or thirty (30) days before the beginning of the fiscal year if the fiscal year is other than the calendar year) the Executive Board shall make the budget available for inspection at the Association office and shall send to each Unit Owner a copy of the budget in a reasonably itemized form that sets forth the amount of the Common Expenses. Such budget shall constitute the basis for determining each Unit Owner's assessments for General Common Expenses and Limited Expenses, if any, of the Association and shall automatically take effect at the beginning of the fiscal year for which it is adopted, subject to rights of rejection as set forth below.

(c) The Executive Board shall make reasonable efforts to meet the deadlines set forth above, but compliance with such deadlines shall not be a condition precedent to the effectiveness of any budget.

13.3 Assessment and Payment of Common Expenses.

(a) General Common Expenses. The Executive Board shall calculate the annual assessments for General Common Expenses against each Unit by multiplying (a) the total amount of the estimated funds required for the operation of the Property set forth in the budget adopted by the Executive Board for the fiscal year in question, after deducting any Limited Expenses and income expected to be received from sources other than Common Expense assessments, if any, and the Maintenance, administration and operation of the Common Elements to which the Limited Expenses pertain (if any), by (b) the Percentage Interest (expressed in decimal form) allocated to such Unit. Such assessments shall be payable in monthly installments, shall be due and payable on the first day of each calendar month and shall be a lien against each Unit Owner's Unit as provided in the Act and this Declaration. Any net shortage with regard to General Common Expenses, after application of such reserves as the Executive Board may determine, shall be assessed promptly against the Unit Owners in accordance with their Percentage Interests and shall be payable in one or more monthly assessments, as the Executive Board may determine.

(b) Limited Expenses. The Executive Board shall calculate the annual assessments for Limited Expenses against each Unit obligated to pay such Limited Expenses, if any, and such assessments shall be payable in monthly installments, shall be due and payable on the first day of each calendar month and shall be a lien against each Unit as provided in the Act and this Declaration. Any net shortage with regard to Limited Expenses, after application of such reserves as the Executive Board may determine, shall be assessed promptly against the Unit Owners obligated to pay the particular Limited Expenses and shall be payable in one or more monthly assessments, as the Executive Board may determine.

-21-

13.4  Subordination of Certain Charges. Any fees, charges, late charges, fines and interest which may be levied by the Executive Board pursuant to §§3302(a)(10), (11) and (12) of the Act and that have not been reduced to liens against a Unit at the time of recordation of a Posted Mortgage, shall be subordinate to the lien of a Posted Mortgage on a Unit.

13.5  Reserves. The Executive Board shall build up and maintain such reserves as it deems necessary for working capital, operations, contingencies and replacements. Extraordinary expenditures not originally included in the annual budget which may become necessary during the year may be charged first against such reserves. If the reserves are deemed to be inadequate for any reason, including non-payment of any Unit Owner's assessments, the Executive Board may at any time levy further assessments for General Common Expenses and/or Limited Expenses which shall be assessed against the Unit Owners either (i) according to their respective Percentage Interests with regard to General Common Expenses, or (ii) in accordance with their obligations with regard to Limited Expenses, and shall be payable in one or more monthly assessments as the Executive Board may determine. The Executive Board shall have the right to segregate all or any portion of the reserves for any specific replacement or contingency upon such conditions as the Board deems appropriate.

At the closing for the initial transfer of title from the Declarant to a non-Declarant purchaser of each Unit, the Association shall collect from such purchasers a non-refundable amount equal to two (2) months (calculated pursuant to the then current or estimated Association budget) installments of estimated Common Expenses assessed against the Unit transferred, which monies shall be deposited into an initial working capital fund under control of the Association. At the time of transfer of control of the Association by the Declarant, the Declarant shall pay such sums attributable to the unsold Units to the Association (which shall deposit such funds in a segregated account) and may be reimbursed by purchasers of such Units when unsold Units are sold. While Declarant controls the Association, it cannot use any of the working capital funds to defray its expenses, reserve contributions, or construction costs or to make up any budget deficits. No Unit Owner is entitled to a refund of these monies by the Association upon the subsequent conveyance of his or her Unit or otherwise. Such payments do not constitute advance payments of regular assessments.

13.6  Further Assessments. The Executive Board shall serve notice on all Unit Owners of any further or special assessments pursuant to this Article XIII or otherwise as permitted or required by the Act, this Declaration and the Bylaws by a statement in writing giving the amount and reasons therefore, specified in the notice, to be effective with the next monthly assessment which is due more than ten (10) days after the delivery of such notice of further assessments. All Unit Owners so assessed shall be obligated to pay the amount of such monthly assessments. Such assessments shall be a lien as of the effective date as set forth in the preceding Sections 13.3(a) and (b).

13.7  Capital Expenditure Limitation. Notwithstanding anything to the contrary in this Declaration, the Executive Board shall not adopt any capital expenditure which exceeds amounts available therefore in the budget and applicable or unspecified reserves and thus requiring additional or special assessments in excess of 20% of the annual budget without first obtaining the approval of those Unit owners entitled to cast a majority of all votes in the Association held by those Units to be assessed for their share of such expenditures by a resolution duly adopted at an annual or special meeting of the Association; provided, however, no such approval shall be necessary for expenditures ("**Emergency Expenditures**") determined by the Executive Board to be needed to prevent damage to persons or property (including, without limitation, the Building or any part thereof).

13.8  Effect of Failure to Prepare or Adopt Budget. The failure or delay of the Executive Board to prepare or adopt a budget for any fiscal year shall not constitute a waiver or release in any manner of a Unit Owner's obligation to pay his or her share of the Common Expenses and/or Limited Expenses as herein provided whenever the same shall be determined and, in the absence of any annual budget or adjusted budget, each Unit Owner shall continue to pay each monthly payment at the rate established for the previous fiscal year until the new annual or adjusted budget shall have been adopted.

13.9  Accounts; Audits. All sums collected by the Executive Board with respect to assessments against the Unit Owners or from any other source may be commingled into a single fund. All books and records of the Association shall be kept in accordance with good and accepted accounting practices, and the same shall be audited at least once each year by an independent accountant retained by the Executive Board.

- 22 -

13.10   Rejection of Budget. Anything herein to the contrary notwithstanding, the Association, by two-thirds vote (by Percentage Interests) of all votes in the Association at a special meeting of the Association called for such purpose, may reject any overall budget approved by the Executive Board within thirty (30) days after the Unit Owners are given notice of the approval of such budget by the Executive Board. Such notice shall be given by the Executive Board promptly after approval.

13.11   Payment of Common Expenses. Each Unit Owner shall pay the General Common Expenses and Limited Expenses assessed by the Executive Board pursuant to the provisions of this Article XIII, without any abatement, offset or deduction whatsoever. All sums assessed by the Association as an annual or special assessment, together with such interest and penalties as are provided for herein or in the Rules and Regulations, shall constitute the personal liability of the Owner of the Unit so assessed and also shall, until fully paid, constitute a lien against such Unit pursuant to Section 3315 of the Act. No Unit Owner may exempt himself or herself from liability for his or her contribution toward Common Expenses by waiver or denial of the use or enjoyment of any of the Common Elements or by abandonment of his or her Unit. No Unit Owner shall be liable for the payment of any part of the General Common Expenses and/or Limited Expenses assessed against his or her Unit subsequent to the date of recordation of a conveyance by him or her in fee of such Unit. The purchaser of a Unit shall be jointly and severally liable with the selling Unit Owner for all unpaid assessments against the latter for his or her proportionate share of the General Common Expenses and/or Limited Expenses up to the time of such recordation, without prejudice to the purchaser's right to recover from the selling Unit Owner amounts paid by the purchaser therefore.

13.12   Collection of Assessments.

(a)   As provided above and in the Act, the Association shall have a lien on each Unit for any unpaid General Common Expense assessments and/or Limited Expense assessments, together with interest thereon. Reasonable attorney's fees and costs (including reasonable fees and costs in appellate proceedings) incurred by the Association incident to the collection of any such assessments or the enforcement of such lien, together with sums advanced or paid by the Association in order to preserve and protect its lien, shall be payable by the Unit Owner upon demand and shall be secured by such lien. A Unit Owner is also personally liable to the Association for unpaid Common Expense assessments and/or Limited Expense assessments and reasonable fees and costs which are incurred during the period that the Unit is owned by such Unit Owner.

(b)   The Executive Board may take such action as it deems appropriate to collect Common Expense assessments and/or Limited Expense assessments by personal legal action, or by enforcing and foreclosing said lien, and may settle and compromise the same, as it shall so determine. Notice of the default and such action may be given by the Executive Board to the holder of any mortgage liens on the Unit. Said lien shall be effective from and after the time the Common Expense assessment or Limited Expense assessment becomes due, and shall have priorities established by the Act. Subject to the provisions contained in the Act regarding lien priorities and the provisions of this Declaration regarding Posted Mortgages on Units, recording of this Declaration of Condominium shall constitute record notice and perfection of the lien. Any fees, charges, late charges, fines and interest which may be levied by the Executive Board pursuant to §§3302(a)(10), (11) and (12) of the Act that have not been reduced to liens against a Unit at the time of recordation of a Posted Mortgage, shall be subordinate to the lien of a Posted Mortgage on a Unit.

(c)   The Executive Board may impose an administrative late charge and a system of fines and/or interest in such amounts and at such rates as may be determined from time to time by the Executive Board for charges and assessments not received when due. Notice of such determinations shall be given to the Unit Owners promptly after being made by the Executive Board.

(d)   Payments received shall be applied first to sums outstanding for the longest time notwithstanding instructions from Unit Owners by endorsement or otherwise to the contrary. Sums payable to the Association shall not be abated or reduced and no offsets shall be permitted by reason of sums due or claimed to be due from the Association or any act or failure to act by the Association or any Unit Owner.

(e)   In the event that any Unit Owner has leased his or her Unit and shall fail to pay any assessment for Common Expenses made against such Unit, and such failure to pay continues for thirty (30) days, the Executive Board may so notify the lessee of such Unit in writing of the amount(s) due, and all rental payments

- 23 -

accruing thereafter shall be paid by such lessee to the Executive Board, up to the amount(s) shown to be due from the Unit Owner in the Executive Board's notice. All amounts so paid by the lessee shall be credited against and shall offset the corresponding rental installment due to the Unit Owner, and under no circumstances will the lessee be obligated to pay to the Executive Board any amount for unpaid assessments during any one month which is in excess of the rental payment due from the lessee for such month.

13.13   Statement of Common Expenses.   Within fifteen (15) days following written request, the Executive Board shall provide any Unit Owner, contract purchaser or proposed mortgagee so requesting the same with a written statement of all unpaid assessments for Common Expenses and other charges due from such Unit Owner to the Association as of the date stated in the statement. The Executive Board may impose a reasonable charge for the preparation of such statement to cover the cost of its preparation, to the extent permitted by the Act.

13.14   Surplus.   The budget of the Association shall segregate and separately identify types of Limited Expenses, if any, and General Common Expenses. Any amounts accumulated from assessments for any type of Limited Expenses in excess of the amount required for actual Limited Expenses of such type and reserves for future Limited Expenses shall be credited to each Unit Owner paying a share of such type of Limited Expenses in proportion to the share of Limited Expenses paid by each such Unit Owner, said credits to be applied to the next monthly payments of Limited Expenses due from said Unit Owners under the current fiscal year, and thereafter, until exhausted. Any amounts accumulated from assessments for General Common Expenses in excess of the amount required for actual General Common Expenses and reserves for future General Common Expenses shall be credited to all Unit Owners in accordance with their Percentage Interests, said credits to be applied to the next monthly payments of General Common Expenses due from said Unit Owners under the current fiscal year's budget, and thereafter, until exhausted.

13.15   Accounting.   On or before the last day of April of each calendar year, the Executive Board shall supply to all Unit Owners audited financial statements including an itemized accounting of the General Common Expenses and Limited Expenses for the preceding calendar year actually incurred and paid together with a tabulation of the amounts collected pursuant to the annual budget or assessments and any income from other sources and showing the net excess or deficit of income over expenditures plus reserves.

13.16   Acceleration.   If a Unit Owner is in default in the payment of the aforesaid charges or monthly installments of assessments for at least sixty (60) days, the Executive Board may, in addition to all other remedies in the Act or Declaration contained, accelerate all other charges and monthly installments of assessments to become due for the next twelve (12) months on the basis of the budget for the calendar year in which such default occurs and assuming the same budget is in effect for the following year; provided, however, a foreclosing Posted Mortgagee shall be entitled to automatic subordination of such sums in excess of the amounts given priority in lien or payment over mortgage liens in the Act.

13.17   Collection Charges.   Any delinquent Owner shall also be obligated to pay (i) all expenses of the Board, including reasonable attorneys' fees, incurred in the collection of the delinquent assessments by legal proceedings or otherwise, and (ii) any amounts paid by the Board for taxes or on account of superior liens or otherwise to protect its lien, which expenses and amounts, together with accrued interest, shall be deemed to constitute part of the delinquent assessments and shall be collectible as such, subject to Section 13.2 above.

13.18   Confession of Judgment.   IN ORDER TO EXPEDITE THE EXECUTIVE BOARD'S COLLECTION OF ANY DELINQUENT ASSESSMENTS, TO THE EXTENT PERMITTED BY LAW, EACH UNIT OWNER (BY THE ACCEPTANCE OF THE DEED TO HIS OR HER UNIT) SHALL BE DEEMED TO HAVE APPOINTED ANY ONE OR MORE EXECUTIVE BOARD MEMBERS THE ATTORNEY-IN-FACT FOR SUCH UNIT OWNER TO CONFESS JUDGMENT AGAINST SUCH UNIT OWNER IN ANY COURT OF COMPETENT JURISDICTION IN PENNSYLVANIA, FOR ANY SUCH UNPAID ASSESSMENT(S) OR INSTALLMENTS THEREOF, WHICH APPOINTMENT (BEING FOR SECURITY) SHALL BE IRREVOCABLE; AND FOR SO DOING A COPY OF THIS ARTICLE 13 AND SAID DEED, BOTH VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT. THE AUTHORITY GRANTED HEREIN TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL THE DECLARATION SHALL BE TERMINATED.

- 24 -

13.19  Utilities.  Charges for use of electricity in Units will be submetered and billed directly to the owner of each Unit by the Association. Such charges will not be Common Expenses. In addition, there are also electricity charges attributable to the central Building equipment, including the equipment supplying heating and chilling through the water loop in the Building to provide heating and air conditioning to the individual Units. Since it is not possible to measure such consumption precisely, the costs attributable to operation of the boiler, cooling tower, pumps and other equipment for the operation of the heating and cooling systems will be apportioned on the basis of Percentage Interests as Common Expenses. Water and sewer charges may be metered or submetered for each Unit in which case charges shall be based upon consumption.

## ARTICLE XIV

### LEASING AND TRANSFERS

14.1  Residential Restrictions.  The Unit Owners desire to maintain the quality and residential character of the Property and the value of their Units. The provisions of this Article 14 are intended to help achieve this purpose. A Residential Unit Owner may lease his or her Unit (but not less than his or her entire Unit) at any time and from time to time provided that (except for a lease made by a Posted Mortgagee which is either in possession or is a purchaser at judicial sale): (1) no Residential Unit may be leased for transient or hotel purposes or for an initial term of less than one (1) year without option for early termination except for default; (2) no Residential Unit may be leased without a written lease; (3) Unit Owners shall be fully and completely responsible for the acts of their lessees; (4) the rights of any lessee of the Unit shall be subject to, each such lessee shall be bound by, and the Association may enforce against the lessee, the covenants, conditions and restrictions set forth in the Declaration, Bylaws and Rules and Regulations; and a default thereunder shall constitute a default under the lease; provided, however, that the foregoing shall not impose any direct liability on any lessee of a Unit to pay Common Expense assessments on behalf of the Owner of that Unit; (5) no subleasing shall be permitted and any purported sublease will be null and void and of no force and effect; (6) no Residential Unit may be leased except to natural persons (not entities); (7) the lease shall provide for rent to be paid on a monthly basis only, shall prohibit pre-payment of rent in excess of one (1) month and a Residential Unit lease shall require a security deposit of at least one (1) month's rent; (8) no leased Residential Unit may be occupied by anyone other than the lessee(s) named in the lease, his or her spouse, domestic partner, natural or adopted children or parents as specified in the lease. If a Unit is leased to two adults who are not married, both names must appear on the lease as lessees and no one may occupy the Unit except for those two people and their natural or adopted children or parents as specified in the lease; (9) no Residential leased Unit may be occupied by more than the number of persons equal to twice the number of bedrooms located in the Unit; (10) no lease shall be effective which does not include and incorporate in full and without amendment all of the terms of the Association Lease Addendum in form and content as approved by the Executive Board from time to time; (11) a copy of the complete proposed lease shall be submitted to the Executive Board at least ten (10) days prior to the initial term of the lease for written approval of the Executive Board as complying with the requirements of this Article 14; (12) a counterpart executed original copy of the complete lease and the lessee's telephone number shall be furnished to the Executive Board within five (5) days after execution thereof and the Unit Owner shall advise the Executive Board in writing of any change in the status of the leased Unit; (13) if any Residential Unit Owner/lessor or lessee is in violation of any of the provisions of the lease, this Declaration or the Condominium Rules and Regulations, the Association may bring an action in its own name or in the name of the Residential Unit Owner/lessor, lessee, or both, to have the lessee evicted or to recover damages, or both. If the court finds that the lessee is or has violated any of the provisions of this Declaration or the Condominium Rules and Regulations, the court may find the lessee guilty of forcible detainer despite the facts that the Unit Owner is not a party to the action and/or that the lessee is not otherwise in violation of the lease or other rental agreements with the Unit Owner. For purposes of granting the eviction against the lessee, the court may consider the Unit Owner a person in whose name a contract (the lease or rental agreement) was made for the benefit of another (the Association). The remedy provided by this subsection is not exclusive and is in addition to any other remedy or remedies available to the Association. If permitted by present or future law, the Association may recover all of its costs, including court costs and reasonable attorney's fees, and these costs and/or damages shall be a continuing lien on the Unit that shall bind the Unit in the hands of the then Unit Owner and the Unit Owner's successors and assigns. The Association shall give the lessee and the Unit Owner written notice of the nature of the violation, and twenty (20) days from the mailing of the notice in which to cure the violation before the Association may file for eviction or damages unless the violation is such that its continuance poses an immediate danger to Unit Owners or the Property, in which event the Association may immediately commence action for eviction or such other remedy as it deems appropriate.

- 25 -